# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6077 | **DATE** | 3/28/2002 |
| **CASE TITLE** | EVANSTON MATERIALS vs. DANCOR, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Motion (11-1) for summary judgment and motion (18-1) to dismiss is denied. Motion (17-1) to amend briefing is granted.**

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | APR 0 2 2002 | |
| | Notified counsel by telephone. | | date docketed | 28 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| DW | courtroom deputy's initials | 02 APR -1 PM 6:27 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

EVANSTON MATERIALS CONSULTING
CORPORATION, an Illinois corporation,
and

HAMLIN JENNINGS, PH.D., an individual
Illinois resident,

    Plaintiffs,

v.

DANCOR, INC., VITRISEAL, INC., a
Delaware corporation, and

LIQUITEK ENTERPRISES, INC., a
Nevada Corporation,

    Defendants.

No. 01 C 6077
Judge James B. Zagel

DOCKETED
APR 0 2 2002

## MEMORANDUM OPINION AND ORDER

Plaintiffs Evanston Materials Consulting Corporation ("EMCC") and Hamlin Jennings, Ph.D. seek a declaratory judgment that EMCC owns certain intellectual property developed in, and inventions arising from, a grant issued pursuant to the National Science Foundation Small Business Innovation Development Act (the "Grant"). Defendants Dancor, Inc. a/k/a Vitriseal, Inc. and Liquitek Enterprises, Inc. (together, "Dancor") move to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(1), 12(b)(6) and 57 for failure to present a justiciable controversy. EMCC and Jennings move for summary judgment pursuant to Fed. R. Civ. Pro. 56.

In ruling on Dancor's motion to dismiss, I must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of EMCC and Jennings and, in ruling on the plaintiffs' motion for summary judgment, I must construe all facts in favor of Dancor.

Because each motion requires me to construe the facts in the light most favorable to the non-movant, I will lay out the pertinent facts, indicating which facts are in dispute, and I will address the import and impact of any disputes in my specific discussion of each motion.

In January 1997, Jennings and Dancor executed a Non-Disclosure and Invention Assignment Agreement (the "NDA") and a Consulting Agreement. The NDA provided, in pertinent part, for (1) confidential treatment of certain information, (2) a prohibition on Jennings's ability to use certain information for commercial purposes to benefit any entity besides Dancor and (3) the assignment of ownership to Dancor of any "Company Inventions" created by Jennings during the term of the agreements and for one year thereafter if developed as a result of Dancor's information. "Company Inventions" was defined broadly as any invention that relates to Dancor's business, projects or products, results from work performed by Jennings for Dancor or results, at least in part, from the use of Dancor's time, materials, facilities or trade secrets. The NDA also provided that Jennings would assist in perfecting, affirming, maintaining and recording Dancor's ownership of such Company Inventions.

The Consulting Agreement set forth the terms of the multi-year relationship between Dancor and Jennings. It provided, among other things, for the scope of work to be performed and the fees to be paid. It also specified that during the term of the Consulting Agreement, Jennings would not "engage in any activity competitive with and/or adverse to Dancor's business" as described therein. Jennings and EMCC contend that the NDA and the Consulting Agreement were signed at different times and that the Consulting Agreement was meant to replace the NDA. It is Dancor's contention that the Consulting Agreement and the NDA were

2

executed contemporaneously and each remained in effect during the term of the consulting relationship between Dancor and Jennings.

In 2000, Jennings formed EMCC for the purpose of obtaining research funding from Federal small business grants, specifically Small Business Innovation Research grants pursuant to 15 U.S.C. §638. On or about June 8, 2000, EMCC applied for the Grant for a project entitled "A Superior Corrosion Resistant Undercoating for Vapor Deposited Hard Coatings." The Grant was awarded on December 1, 2000. Jennings acted as the Principal Investigator for EMCC under the Grant. The conditions of the Grant provide that EMCC, as grantee, retains all right, title and interest to any Grant-generated invention or discovery of EMCC (not including that developed by EMCC's subcontractor), subject to the Federal government's right to have a non-exclusive, irrevokable, non-transferable, paid-up license to such Grant-generated invention.

Dancor alleges that on June 13, 2000, in between EMCC's application for the Grant and NFS's award of it to EMCC, Jennings sent Dancor a letter, signed by Jennings (the "Jennings Letter"), which advised that, as of June 30, 2000, Jennings would be doing business as EMCC and instructed that all payments formerly made payable to Jennings be made payable to EMCC. Dancor quotes the Jennings Letter as stating that "[a]ll former commitments agreed to by Hamlin Jennings will be assumed by EMCC. We look forward to the continued successful development of the Vitriseal." Jennings and EMCC claim that they do not remember writing or sending the Jennings Letter.

On March 31, 2001, Dancor and Jennings (either individually, or as President of EMCC, depending on whether EMCC assumed all of Jennings's obligations under the agreements between the parties) terminated the consulting relationship. On June 30, 2001, EMCC completed

the work under the Grant and, on July 12, 2001, EMCC applied for a Phase II grant ("Grant Proposal II"). On or about June 6, 2001, EMCC began exploring the possibility of a strategic partnership with Fortune Brands, Inc. to make commercial use of certain Grant-related intellectual property by creating commercial products from such intellectual property.

Also on June 6, 2001, Dancor's attorney sent Jennings a letter (the "Attorney Letter") describing Jennings's obligations under the NDA, Consulting Agreement and a third agreement, Amended and Restated Assignment of Royalty Agreement, dated July 15, 1998. The Attorney Letter demanded that, among other things (1) Jennings maintain the confidentiality of Dancor's information and (2) disclose to Dancor any "inventions" conceived or reduced to practice by Jennings during the consulting relationship, including EMCC's work under the Grant. The Attorney Letter included in its demand any Grant-related work and inventions. The Attorney Letter also describes Jennings's breach of other obligations under the agreements and demands that Jennings comply with such obligations.

Motion to Dismiss

Dancor moves this Court to dismiss the Complaint for failure to state a claim on which declaratory relief can be granted. Dancor claims that the Complaint fails to allege an actual, justiciable controversy or cause of action between the parties. The test of justiciability in a declaratory judgment action is whether there is a "substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Vickers v. Henry County Sav. & Loan Ass'n*, 827 F.2d 228 (7th Cir. 1987) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

4

The adverse legal interests are evident in the competing claims to ownership of the intellectual property that EMCC created in connection with the Grant. EMCC claims that such intellectual property, by the terms of the Grant, vests solely in EMCC. Conversely, Dancor claims that any intellectual property created in connection with the Grant is subject to the terms and conditions set forth in the Agreements and, in its Attorney Letter, Dancor demands that such intellectual property be delivered and assigned to Dancor.

The immediacy and reality of the controversy is evidenced by the problems EMCC is having, and will continue to have as long as the issue of ownership is unresolved, as it seeks to make commercial use of the Grant-related intellectual property. It has already experienced the first of these difficulties in its attempt to enter into an agreement with Fortune, Inc. to make commercial use of the Grant-related intellectual property and to further develop such Grant-related intellectual property in its Grant Proposal II. As long as Dancor asserts some ownership in the intellectual property, as it did in its Attorney Letter, this clouded title will prevent EMCC from making any use of such intellectual property with a third party and represents a "continuing harm" such that a claim for a declaratory judgment is appropriate.[1]

Dancor also advances the argument that Jenner and EMCC fail to particularly identify, distinctly claim or define the intellectual property in question. Dancor identifies 25 events that it argues are contingent future events the resolution of which is important to determine this claim. Included in this list is whether the National Science Foundation ("NSF"), the entity that made the Grant, knows "what the invention is," whether future grant proposals will merit a favorable

---

[1] This continuing harm is also what is lethal to Dancor's ripeness and mootness arguments.

review, whether any inventions will be conceived or reduced to practice, how any patent claims will compare to the prior art and whether any patent will ultimately be granted.

It is true that neither party, nor this Court, knows how these 25 events will be resolved but Dancor misplaces its focus by concentrating on these events. The dispute before me is not concerned with the issues raised by the 25 events – this is for the U.S. Patent and Trademark Office (the "PTO") to decide if and when it becomes appropriate for it to do so. While it remains to be seen whether the intellectual property will result in any inventions when and if it is reduced to practice, in focusing on that issue, Dancor skips over the threshold question that is immediately and properly before me: the relative ownership rights as between the parties.

I find the more limited question of the relative ownership rights, and the events and circumstances surrounding this question, to be sufficiently concrete and definite to meet the standard for a justiciable controversy. Moreover, it bears noting that Dancor's arguments that the intellectual property is not identified with sufficient particularity falls a bit flat considering that, in its Attorney Letter, Dancor did not consider such intellectual property too nebulous to demand its assignment.

Finally, although they do not warrant granting Dancor's motion to dismiss, the questions that Dancor raises about the particular identities of the inventors and the elements of any patent claim certainly warrant further inquiry. These are issues that are properly addressed in discovery, which is also the appropriate time to develop a more specific understanding of the precise nature of the Grant-related intellectual property.

## Motion for Summary Judgment

Plaintiffs move for summary judgment and a finding that they are the rightful owners of Grant-related intellectual property. Summary judgment is appropriate if, after drawing all reasonable inferences in favor of the nonmoving party, this Court concludes there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 320 (7th Cir. 1992). In other words, the question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2509-10 (1986).

Here, there are at least two genuine issues of material fact that present a sufficient disagreement about the evidence to require that I deny plaintiffs' motion for summary judgment. The first two factual disputes are about documents allegedly passed between the parties that will likely do much to define the rights of each side with respect to the intellectual property in question. Plaintiffs would have me believe that this matter is simply an interpretation of the Federal statute that administered the program that made the Grant to EMCC. In plaintiffs' view, Dancor is precluded from asserting any ownership interest in the Grant-related intellectual property because EMCC developed the Grant-related intellectual property in connection with a Federal program that is subject to various statutes that set forth ownership as between the NSF and EMCC, as grantee.

What plaintiffs fail to consider is how Dancor's prior relationship with Jennings and EMCC impacts, or may impact, EMCC's ownership right in intellectual property developed prior

7

to the Grant award. Plaintiffs even make the bold assertion that the presence of Dancor in the Grant process would have vitiated the Grant, thus proving, in plaintiffs' eyes, that Dancor intellectual property could not have been involved. Plaintiffs fail to take into account that it might not have adequately disclosed its Dancor-related obligations to the NSF in the Grant application process. This case will hinge on the facts and circumstances surrounding the formation of the relationship between Dancor and Jennings and then on the facts and circumstances surrounding whether a legal relationship exists between Dancor and EMCC.

The Jennings Letter is called a "smoking gun" by Dancor and its existence is questioned by plaintiffs. Its existence and meaning is a crucial fact in dispute between the parties and will go a long way towards shedding light on the nature and character of the relationship between Dancor and EMCC. If EMCC indeed assumed all obligations of Jennings, then this would presumably include all obligations under the Consulting Agreement, the NDA and the Royalty Agreement. This being the case, then Dancor may be able to prove its allegation that EMCC is an alter ego of Jennings and, consequently, Dancor may have a claim to that portion of the Grant-related intellectual property that derived from intellectual property developed in connection with the three agreements.

Which brings me to the second crucial dispute about the nature of the contracts between the parties - the relationship of the NDA to the Consulting Agreement. If, as plaintiffs contend, the Consulting Agreement supersedes the NDA, then Jennings (or EMCC, depending on the outcome of the dispute over the Jennings Letter discussed above) would have much more limited obligations to Dancor in connection with any intellectual property developed under the Consulting Agreement. If, as Dancor contends, the NDA and the Consulting Agreement were to

8

remain in effect contemporaneously, then Dancor may well be able to make a broad claim to ownership of Grant-related intellectual property. Indeed, it may turn out that EMCC ran afoul of the Federal statutory guidelines that it seeks to use as a refuge from Dancor's claims. On the other hand, a contrary interpretation would indicate more limited rights for Dancor.

For the foregoing reasons, defendants' motion to dismiss action for declaratory judgment for failure to present a justiciable controversy [18-1] is DENIED and plaintiffs' motion for summary judgment under Federal Rule of Civil Procedure 56 [11-1] is DENIED.

ENTER:

James B. Zagel
United States District Judge

DATE: March 28, 2002